Last case on the docket this morning is Cosco v. Giacone, file number 5-12-0483, and Mr. Cochen, you're up first. May it please the court, I represent the defendants of this replevant action regarding an engagement slash drink-gift ring regarding two individuals who were engaged on December 24, 2010. As this court is well aware, a replevant action is a statutory proceeding and must be strictly followed. The plaintiff must meet his burden and sustain his right by a preponderance of the evidence. After an afternoon of testimony, the trial court held that the engagement was either broken by defendants in March of 2011, when she allegedly returned the ring, or was mutually broken as evidenced by the following actions, and there were some foundings after that basis. Briefly, a few of the facts are that the parties began dating in 2005. During the relationship, it is undisputed that the plaintiff had a history of buying Ms. Giacone much jewelry. This particular slash ring was given to my client during Christmas Eve, wrapped in silver Christmas paper. She then proposed, she accepted. Again, there was testimony by my client's mother that he pulled her aside prior to giving the ring and said, you know, I didn't get her very much for her birthday this year, but wow, she's really going to like this Christmas gift, and also I'm going to go ahead and propose to her. It's clear that this was a dual-purpose ring. The first week of January, a few weeks after the ring, the parties returned to the Dinosaur Paid Jewelers Department of Law to have the ring set. What's important to focus is, from this point on until the entire trial, Mr. Costco does not remember going back to the mall and having this ring reset. We submitted a receipt from Paid Jewelers showing January that they did go back. That's also significant because that's the time when, while they were waiting for the ring to be set, they're walking around and they come across a Cadillac. Mr. Costco then offers to my client, would you like, instead of this ring, would you like to have this car instead? She says, no, I love the ring. He doesn't remember being at the mall, nor does he remember having this conversation. Again, this is important because this is the indifference that Mr. Costco placed on this particular ring. It wasn't just purely an engagement ring. It was a gift. As we get more into it, even their own complaint alleges that demand, allegedly, wasn't made until February of 2012. Again, it shows that he did not characterize that as a true gift. Well, you know, Mr. Cushing, you're arguing the other side of this. This is a bench trial. Yes, sir. And the standard review is manifest way to the end. Yes, sir. Which means an opposite conclusion must be clearly obtained. Yes. And so, I mean, you can… Yes, a judge may have seen things the way that you're arguing them. However, the judge didn't. So why is the decision against the manifest way? Excellent. Judge, the reason why is because, quite frankly, the plaintiff needed to make its prima facie case. Okay? One allegation is that the defendant broke the engagement, my client, and returned the ring to the plaintiff on March 15, 2011. He then, in the same prima facie case in their allegation, paragraph 2D of the complaint, says the defendant then took possession of the ring without permission of the plaintiff on March 29, 2011. That means the plaintiff's own complaint, prima facie, they said Mr. Kosko had possession of this ring between March 15, 2011 and March 29. It's impossible, Judge. The reason is we submitted an evidence of a picture, Exhibit D, of my client's finger with this engagement ring on her finger dated March – Monday, March 21. She testified she had that ring in her possession during the entire time, unrefuted, no question about it. Therefore, the plaintiff's own prima facie case that my client took the ring on March 15 and retook it in March, right, is impossible. Second, the trial court in all due respect didn't even address this exhibit of the basic allegation. What also is very important, Judge, is he claims that he allowed or was like that. The third allegation is the plaintiff, paragraph 3, states the plaintiff has made a demand upon defendant for return of the ring on February 1, 2012. That's the plaintiff's own complaint, alleged. As this court knows, in a reclaimant action, you've got to generally make a demand. There was no evidence whatsoever from the defendant or the plaintiff that the demand had been made on February 1, 2012. Again, a basic allegation in the complaint, no evidence to support it. Judge, in addition to that, there is significant evidence that these parties were still engaged the entire time. We refute the ring was ever returned, and that picture supports that argument. Go back to March 29 during this alleged breakup. The evidence is clear that during the entire summer, the two parties still were together. Just three days after this alleged breakup, Giacone, the plaintiff, went to his mother's house or my client's house. Just six days after the alleged breakup, the plaintiff treated Giacone and her mother to dinner at the house on March 24, unrebutted. March 26, Giacone's mother also testified that they were together. They ate at Mary's Restaurant. Plaintiff admitted the very night, on March 26, they were together. April 17, April 30, April 30, the plaintiff, after this alleged breakup that the court found, he has a birthday party for my client. June 2, again, Giacone's grandson, plaintiff in Plain, Portugal. June 2, this is after the alleged breakup, the court found there was a breakup in March. June 2, the plaintiff and Giacone celebrated his birthday by going to the boat in Metropolis. Is this the actions of people who were broke up? It's undisputed at trial, and he admitted to that. He allowed, permitted, Ms. Giacone to wear this engagement ring after this alleged breakup the entire summer of 2011. Judge, is that against the math, this way of the evidence? I believe it is. There is absolutely no reference, in all due respect to the trial court, of how you rectify this alleged breakup in March. And yet, they're together the entire time, and she continues to wear the engagement ring. I mean, sometimes we've got to put a hat on, is that, well, if you're allowing somebody to wear an engagement ring, you go out in public and wear it, then maybe, just maybe they're still engaged. No, no, no comments at all about that. And it helped the cases that I reviewed talk about that. I think what's also very important, Judge, is that the plaintiff and Giacone went on their normal vacation, he's an agent for State Farm, in July of 2011, to Bermuda. So four months after this alleged breakup, they're going on vacations together. There's pictures admitted into evidence of her wearing this ring together in Bermuda. Again, may I display the evidence? I believe so. During May and August of 2011, the plaintiff was paying for most of my client's bills as she was working on and off again at General Dynamics. May, they went to Cape Girardeau together. July 24th, just a couple of weeks prior to, or a few months after, prior, or in August, the plaintiff and Giacone went out on a pontoon boat. Spent time together. Why is this important? This is important, Judge, because this supports the Bermuda, I understand the manifesto, but the Bermuda, this is a statute that has to be strictly construed. The prima facie case, the allegations that were made, I've already shown they haven't even proven that. They have to prove that he had the ring from March 15th to March 29th. That's their allegation, not ours. We showed a picture right there of the ring on her finger, unrefuted in the record. Why is this important? Because all of this shows that my client testified that the actual breakup occurred in August 19th or 26th, 2011, and that he broke it up. Why is that insignificant? What evidence do I have to show that, Judge? Did Samantha display the evidence? Up until August of 2011, during that entire summer, they went on fishing trips, pontoon boats, vacations, Bermuda, spent time going to the circus together, did all the normal things that people who are going out do together. After this alleged incident, which I'm going to get to in a second, in August of 2011 happened, there was a trip in September, early September, another state farm trip, 2011. What happened? Mr. Costco didn't invite her. Why is that? Well, because he broke up with her. Undisputed evidence that since that incident in August of 2011, they have never gone on a date, they have never been out together, or done anything. The point is this. This is what's against Samantha's way to evidence. In March 2011, in all due respect to the trial court, it's impossible that the engagement broke up because she's still wearing the ring, they're still doing all these activities together as they have done in the past. All of a sudden in August, and I'll get to the facts of that case, where they really break up, where Costco breaks up with my client, no other relationship, no trips together, nothing. No change after March, change after August. The record is clear on that. In addition to, the recluse stash requires that a good be wrongfully taken or wrongfully detained. Our testimony has been clear from the beginning. She's had the ring since December 24, 2010, other than it being said, to this day, she has the ring. It was never out of her possession. People testified she wore it the entire summer of 2011. There was no hiding engagement or hiding this or that. In fact, Mr. Costco admits on the record he was not telling people he was not engaged. But what's important is this. During this alleged March of 2011, where according to their testimony, my client went and gave the ring back in March. But then their allegation in the privatization case is that it was wrongfully taken by my client. That's a central element of the recluse stash. It has to be wrongfully detained and wrongfully taken. Here's the testimony. So back on March 29th, this is according to your story, so you just let Cindy go back on her own and get the ring. Yes. Okay, so when she was going to get the ring according to your testimony, you didn't do anything to stop her from getting that ring, did you, Paul? No. Okay, well prior to her leaving, did you see her with the ring? Yes. Okay, isn't it true you did not tell her to take off the ring and put it back in the safe, did you? No, I did not. Okay, Paul. So when it says in your case, in your complaint, that the defendant took possession of the ring without permission of you, that's not true, is it? You allowed her to take the ring, didn't you? Well, she came in the house, got in there. Yes. Now, the replevant statute still begs the question, how can a ring be wrongfully detained or wrongfully taken? Even if you assume his story is true, but let's assume it's true, let's walk down this path. He admitted he allowed her to come and take his ring. Therefore, a demand has to be made. No demand was made in this. No evidence of a demand has been made. The court did not follow First Illini v. Whitted Industries, where the court clearly held if a defendant has lawful possession of the property, a replevant cannot be maintained until the plaintiff has made a demand for the surrender of the property and the defendant has refused. There is no demand, there's no refusal. He allowed her to take the ring. Also, Keller v. Robinson, that I cited in my brief, until a demand has been made and refused, the defendant's possession of the property is not considered wrongful. The trial court also erred against the man for the evidence when it found the engagement was broken back in March. Again, I talked about the Exhibit 10 and the picture for wearing the engagement ring. The picture was admitted to evidence and was never disputed. So how she took possession of a ring during this time period was impossible. The plaintiff never produced one person or physical evidence of any kind to demonstrate to this court that he had possession of the ring from March 15 through March 29, 2011. In fact, when he was asked by his own attorney, how did she return the ring to you? Did she give it to you, throw it at you? He said, I don't remember. This would have been March 15. That's his central allegation. He says, I don't remember how the ring was returned. We suggest the reason he doesn't remember is because the ring was never returned. The plaintiff questioned, well, she wore the ring all the summer of 2011, didn't she, Paul? Yes, she liked it. And you don't have any problem with that, correct? Right. No, I don't have any problem with that. The August 2011 incident, that's the testimony where the breakup of Mr. Costow actually took place. He admitted there was a major fight. There was a phone call from the daughter. There was a dispute about that. And he admits on the record, he threw the phone, the cell phone basically, in her direction. When I threw the phone, I was very, very upset. I don't know of anything going on there that night. But yes, I threw the phone and I said, I'm done. As to what I said, I was done. I was done arguing. I'm done. I walked out of the place. In fact, Mr. Costow was so concerned about him breaking up with her, he said he's done a permanent relationship, he called two of her friends and said, go check on her. I'm concerned about her health. Now, the reason why this is important is if they had already broken up back in March, why is he so concerned about this other breakup now? Because there was no breakup in March. What's also significant for this court, that again, unfortunately, the trial court didn't really address the August, the testimony in August. The trial court did hear the evidence, and the trial court in its order does say there was a breakup in March. And whether it was the breakup then or whether it was a mutual breakup over time because they couldn't agree on a date and all that, I mean, all this was addressed in its order. Well, Judge. I mean, what I hear sounds like you're closing argument to the trial court. Well, no. But it's not. Our task is, is there sufficient evidence to support the trial court's decision? And, you know, we don't have to accept what you say the inferences should be from the evidence if there is evidence from which the judge could infer otherwise. Judge, I understand and respect that. But the question becomes this, is how does the appellate court, how does this appellate court find that he made out a prima facie case when the evidence does not support its allegation? And that's my point. They allege on March 15th. He testified that that happened, right? He testified she got the ring back. Judge? In March. Yes, he did. It's his burden. Why can't the trial court believe? Because the evidence suggests otherwise. Actually, when he first was asked about breakup, he said it occurred late March. No, the allegation is March 15th. Then the complaint says March 29th she came in and got the ring, Judge, but she already had the ring. It was undisputed that my client had the ring on March 21st. So how can we have an allegation that he took the ring, she gave the ring back on March 15th, and then she came and got it again March 29th? That's their allegation, their burden in this case. When we have evidence, a picture with a ring on it. And you got a chance to question him about it. I'm sorry? And you got a chance to question him about it. No, they never called him on Ricardo. You had a chance to cross-examine whatever witnesses they called. You got a chance to put your witnesses on the stand. The trial judge heard all of that. Yes, sir. There was disputed evidence about probably almost everything, but certainly about what happened in March, and the trial court weighed the credit, as he says in his order, weighed the credibility of the witnesses, determined how much weight to give the evidence, and made a decision. Judge, this is a matter of law question to me, quite frankly, is how can somebody prove an allegation when there's no evidence? They don't have to prove the exact date in the complaint. That's pretty much law school stuff, you know? I mean, the complaint can be amended to conform to the proof. The trial judge in his order doesn't say it happened on a certain date. He just says in March. Judge, I agree. But the plaintiff's attorney never attempted to amend it until the motion to reconsider hearing, which is substantially 30 days. He said, well, maybe I can amend to order the proof, Judge. But, Judge, I think the other part of the order is this. Your time's up, Mr. Cochran. You'll get a chance to rebut. All right. Mr. Sherk. Your Honor, counsel, may it please the court. Your Honor, I believe you pretty well spelled out the case. The case presented to the court, we had story A presented by Mr. Acosta, story B presented by Ms. Giacome. The court decided to rule based on story A. Respectfully, the counsel, I believe what he's asking this court to do today is to reevaluate witness credibility, reevaluate weight that was given to evidence, and reevaluate the inference that the trial court then drew. To begin, there's issues allegedly regarding the requirements of reclaiming. Reclaiming under the statute requires that goods were wrongfully taken and detained. Thankfully, we have a case that describes what wrongfully taken means, and that's simply the party that does not have a superior right to the property, currently holds the property. We also have that the property was detained. Mr. Acosta did make a demand that the ring be returned. Both he and Ms. Giacome testified to the fact that in February he asked for several items to be returned, including car keys, a credit card, and the engagement ring. Ms. Giacome decided not to return the ring at that time. More importantly, the second district in Carroll v. Curry states that the purpose of the demand is to give the offending party a chance to return the property in question. If the court refers to the complaint, it was a two-part complaint, the first requesting the return of an engagement ring and the second kind of requiring the return of some silver coins. The second count was dismissed because Ms. Giacome at that point did return the silver coins. We would allege then that she did have an opportunity to return the ring at that point, so therefore a demand was made. Even in the event a demand was not made, it's obvious at this point it would be futile. There was a hearing based on whether or not the ring would be returned, and at no point was the ring returned. Again, she had ample opportunity to return the ring in question. The third issue is in regards to the March 2011 breakup. Again, it is not unreasonable or arbitrary that the trial court found that there was a breakup in March of 2011. We have testimony on behalf of Mr. Cosco detailing the return of the ring. The trial court simply decided that he was the more credible witness. It would be our contention at this point that to say anything other than that would re-evaluate witness credibility, which is respectfully not the purpose of this court. Even in the event there was no March 2011 break, there's no testimony or evidence provided that Ms. Giacome then has superior right to the ring. The trial court very specifically listed the reasoning behind a mutual breakup, the first issue being that the defendant refused to place a notice in the paper, the second point being that she refused a marriage opportunity in Las Vegas, the third being an on-again, off-again relationship between the parties, which Mr. Cosco described, and that she never throughout the entire process set a date. Well, yes, after the return of the ring in March 2011, yes, they went to dinner, he paid some bills, they went out on a pontoon boat. That doesn't necessarily matter. That's not going to change the issue of who has superior right to the ring. There is no testimony that she later put notice in the paper. There is no testimony that she later agreed to a date. There is no testimony that she later agreed to a location. In the Second Circuit, or in the Second District, excuse me, in the case of Van B. Beers, the facts are nearly on point with what we're talking about today. There was no date set in that case. There was a cooling-off period between the parties. In that case, the court held that there was a mutual breakup. Again, the facts are just simply the same in this case. Yes, there was a large period of time while this argument was going on. Still, during this long period, we have no evidence that while they were supposedly still going on boat trips and having dinner together, at no point was there a date set. At no point was there a notice placed in the paper. At no point was there a location set. That's the definition of a mutual breakup according to Van B. Beers' case. There's no testimony of anything other than that. We also have some brief issue regarding whether or not the ringing question was an engagement ring. Again, we have testimony. He provided the ring. Yes, it was in a silver Christmas paper box. She took the box. Mr. Acasco then took the box back, went down on one knee. Both parties testified that he asked for her hand in marriage at that point. I don't know a way for an engagement to be more clear than that. He has the ring. He's on a knee. He asked for her hand in marriage. That's an engagement. At that point, Ms. Geocombe then has some requirements under the contract of marriage. At no point did she fulfill those obligations. So, in conclusion, plaintiff has a superior right to the ring. There's no argument. He bought the ring. He paid for the ring. He then proposed. At that point, there are some requirements on Ms. Geocombe. She did not perform those. No date was set. She did not allow notice to be placed in the paper. She refused a location. At that point, there's no change in the superior right to the ring. Mr. Acasco then asks for the ring back. She has the opportunity to return the ring. She does not return the ring. Therefore, we have a wrongful taking and a wrongful detention. Thank you, Your Honor. Okay. Thank you, Mr. Sharp. Brief rebuttal, Mr. Coaching. Judge, the court found that there was a mutual break-in. The problem is, on page 23 of my brief, courts, the law, there was no allegation in the reclubbing count that there was a mutual break-in. There was no testimony by Mr. Acasco that there was a mutual break-in. There was no testimony by my client that there was a mutual break-in. Well, then Judge found that based on the evidence. What? You know, I mean, but the Judge said, I mean, in his order, he says, and he lists factors. Because of these things happening, you know, he says, I find Judge, I agree, and I cite various case laws, but I think it's on point, that a judgment cannot be based generally on something that's not been pledged or an action cannot be proved without the proof of the allegations. Well, he just, unless he has a superior right to the ring. Judge, I, you know, Judge, I understand that. But I don't see how, in all due respect, a trial court can have a finding of a mutual break-up when there's been no allegations in the pleadings or answers or any testimony. That would, in all due respect, I don't think a trial court, in a case law that I review, can go out in thin air and grab a particular remedy on its own. And I think, unfortunately, that's what the trial court did in this case as to the mutual break-up. Getting back to the other case, Judge, again, it's, to me, it's rather clear that a repledent statute is a specific statutory creature, that an item has to be wrongfully taken. The record is replete. Even if you assume his story, that's what I'm saying, is I'm giving the court the benefit of the doubt. He allowed Ms. Giacconi to come in and retake this ring and walks out with no objection, no calling the police, nothing. The cases that I read are on point. Unless something's been wrongfully taken or wrongfully detained, you're entitled to it. He has the berth, not us. Therefore, at the bare minimum, some type of demand has to be made. First line, I hold specifically, if you don't. And he acknowledges that, Judge, in his own complaint. He says demand was made in February 2012. He makes that allegation, but he supports no evidence to support that. So, at first line, I specifically hold, if you don't make a demand, you have to argue that it's futile or the child court has to say it has been futile, or you have to ask it to be waived. Plaintiff never did that, in all due respect, Your Honor. To me, this is a basic, they did not meet their prime of station case. They did not get the evidence in. Now, could they have? Maybe they could have, should have, whatever. I'm going on what the record is in this particular case, Your Honor. And there's absolutely no evidence that a demand was made. There's no dispute that he allowed her to take this ring. There's no dispute he wore, that she wore this ring the entire summer of 2011. There's no dispute on that. So, Judge, for those reasons, and in fact, the gift part, you know, the evidence, I think, can be interpreted differently, but the fact that he never made a demand until February, almost a year later, actually supports our argument that this ring was more of a gift than an engagement ring. I mean, if the engagement was broke up in March, why is he allowing her to wear an engagement ring all over Selma Mall? Why is he not telling people they're not engaged? Now, to me, that's overwhelming evidence, Judge. Maybe not to this court, but to me, it just doesn't add up. So based upon the facts that were presented, the admissions, the inconsistent testimony by Mr. Cox, with the inability to recall basic facts such as how did the ring get returned to you in March, I think calls into serious question the credibility of this court or the determination of this. I'll be honest, Judge, I've won jury trials I didn't think I was going to win and lost others. I have unfortunately, this is one walking out of a particular bench trial, I'd rather, you know, I don't quite understand your view because I think to me the facts and the case law is such. And so I respectfully request you to take into consideration these decisions or these arguments in this particular case. Thank you, Judge. Thank you, Mr. Coachman. Thank you all for your briefs and arguments. We'll take this matter under advisement and issue a decision in due course. We're on recess until 1.30.